THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:18-cr-00074-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANGELICA MARIE NERIS, ) <br> ) <br> Defendant. ) <br> _____ ) | O R D E R |

**THIS MATTER** is before the Court on the Defendant's "Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)" [Doc. 63].

**I.    BACKGROUND**

In June 2018, the Defendant Angelica Marie Neris was charged in a Bill of Indictment with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); one count of using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); one count of possession of a firearm by a convicted felon, in

violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm with an altered or obliterated serial number, in violation of 18 U.S.C. § 922(k). In March 2019, the Defendant pled guilty to the conspiracy charge pursuant to a written plea agreement; in exchange for her plea, the other charges were dismissed by the Government. [Docs. 33, 35, 36].

In October 2019, the Court sentenced the Defendant to a term of 210 months' imprisonment, to be followed by five years of supervised release. [Doc. 53]. The Defendant is currently housed at FCI Tallahassee and has a projected release date of June 18, 2033.[1]

The Defendant now moves the Court for compassionate release, arguing that, due to a number of underlying health conditions, she is at risk of serious illness or death from COVID-19. [Id.]. The Defendant further argues that the COVID-19 pandemic has created unusually harsh conditions of confinement, and that she "has served enough time to serve just punishment." [Doc. 63 at 7]. The Defendant also notes that her underlying offense was non-violent, and that other, more violent offenders have received the benefit of compassionate release. [Id.]. Finally, the Defendant

---

[1] See https://www.bop.gov/inmateloc/ (last accessed Nov. 1, 2022).

requests the appointment of counsel to assist her in making her compassionate release request. [Id. at 16].

## II.  DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, it appears that the Defendant has sufficiently exhausted her administrative remedies with the BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must

3

also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court recognized, that the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. The Defendant bears the burden of establishing that she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant asserts that she has a number of underlying conditions—including obesity and other, unspecified "underlying health issues"—that increase her risk for serious illness or death from COVID-19. [Doc. 63 at 3]. She further contends that she has contracted COVID twice previously and continues to suffer adverse consequences, such as shortness of breath. [Id.]. The Defendant, however, has not submitted any medical records to support these claims. In any event, as the Court has previously noted that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates during the COVID-19 pandemic. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). In addition to these measures, BOP has offered vaccinations to both inmates and staff, which has conferred inmates such as the Defendant further protection from the virus.[2] Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given BOP's efforts, the

---

[2] It is unclear from the Defendant's motion whether she has received the COVID-19 vaccine.

6

fact that the Defendant faces a potential risk of contracting the virus again while incarcerated, without more, is not sufficient to justify the relief she requests.  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The Defendant also argues that the quarantine restrictions imposed by the BOP during the pandemic have been unduly harsh, resulting in frequent lockdowns, limited visitation from family, and reduced opportunities for rehabilitation.  [Doc. 63 at 7].  These measures, however, were temporary in nature and were necessary in order to slow the spread of virus.  Moreover, the circumstances the Defendant describes was not unique to her, as many prisoners throughout the BOP were subjected to similar conditions, at least temporarily.  For these reasons, the Court concludes none of the grounds cited by the Defendant, considered either singly or in combination, constitute extraordinary and compelling reasons for her early release.[3]

---

[3] The Defendant also cites the fact that some defendants who committed violent crimes have been granted compassionate release.  The case specifically cited by the Defendant,

7

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's offense was very serious. The Defendant was responsible for distributing a significant amount of methamphetamine in Western North Carolina. Following her arrest, she admitted to investigators that she and her co-conspirator had purchased 12-15 kilograms of methamphetamine from their supplier in the three preceding months alone. [Doc. 49 at 6-8]. Additionally, the Defendant possessed firearms, despite her prohibited status, and maintained a premise for distributing methamphetamine. [Id.]. The Defendant also has a significant criminal history, including multiple convictions for drug possession and convictions for selling cocaine within 100 feet of a school. [Id. at 10-12]. The 210-month sentence imposed for the Defendant's offense adequately reflects the need for the sentence to reflect the true extent and seriousness of the Defendant's

---

however, involved a defendant who had been subject to the "stacking" of § 924(c) convictions, resulting in a sentence of life plus a consecutive sentence of 145 years. [See Doc. 63-1]. This case, therefore, is readily distinguishable from the Defendant's case.

8

offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes. These factors also counsel against a reduction of the Defendant's sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of her continued incarceration.

The Defendant also moves for the appointment of counsel to represent her in connection with litigating her motion for compassionate release. The Defendant has no constitutional right to the appointment of counsel to file post-conviction motions. Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)); Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel beyond first appeal of right)). The Court may, in some circumstances, appoint counsel to represent a prisoner when the interests of justice so require and the prisoner is financially unable to obtain representation. See 18 U.S.C. § 3006A(a)(2)(B). In the instant case, the Defendant has already filed a motion for compassionate release outlining the

9

grounds for her motion. Accordingly, the Court concludes that the interests of justice do not require the appointment of counsel in this case. See <u>United States v. Riley</u>, 21 F. App'x 139, 141-42 (4th Cir. 2001).

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release)" [Doc. 63] is **DENIED**.

**IT IS SO ORDERED.**

Signed: November 11, 2022

Martin Reidinger
Chief United States District Judge