**[THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CRIMINAL CASE NO. 1:18-cr-00074-MR-WCM-1**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **ANGELICA MARIE NERIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 74].

## I. BACKGROUND

In 2017, the Defendant Angelica Marie Neris and her boyfriend, Terrell Carlin Thomas, engaged in an armed methamphetamine-trafficking operation within the Western District of North Carolina. During a search of the Defendant's home that she shared with Thomas, officers recovered methamphetamine and four firearms from a safe. The serial number on one of the firearms was defaced, and neither the Defendant nor Thomas could legally possess firearms. During an interview with investigators, the Defendant stated that she and Thomas had purchased "12–15 kilograms" of

methamphetamine from a supplier named "Carlos" during a three-month period. [Doc. 49: PSR at 6-8].

A grand jury in this District charged the Defendant with six counts related to drug trafficking and illegal firearm possession. [Doc. 1: Indictment]. Count One charged the Defendant with conspiracy to possess with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. [Id. at 1-2]. Counts Three and Five charged the Defendant with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). [Id. at 2-3]. Counts Seven and Eight charged the Defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), respectively. [Id. at 4-5]. Count Six charged the Defendant with possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). [Id. at 4]. The Defendant faced a mandatory minimum prison sentence of ten years for Count One and a mandatory minimum prison sentence of five years, consecutive to any other penalty, for Count Six. See 21 U.S.C. § 841(b)(1)(A); 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii).

The Defendant entered into a written plea agreement with the United States, pursuant to which the Defendant agreed to plead guilty to the conspiracy charge set forth in Count One of the Indictment. [Doc. 35: Am. Plea Agmt. at 1]. In return, the Government agreed to move to dismiss the remaining five counts against her, including the § 924(c) count. [Id.].

In anticipation of sentencing, the Court's probation office prepared a presentence report, which calculated an advisory Guidelines range of 210–262 months. [Doc. 49: PSR at 17].

At sentencing in October 2019, the Court adopted the PSR as written and sentenced the Defendant to a term of imprisonment of 210 months' imprisonment, at the bottom of the advisory Guidelines range. [Doc. 53: Judgment at 2]. The Defendant did not appeal her conviction or sentence.

From December 2019 until December 2023, the Defendant was housed at Federal Correctional Institution (FCI) Tallahassee. See United States v. Hernandez, No. 4:23-CV-319, Doc. 76 at ¶ 34 (N.D. Fla. July 28, 2025). In October 2022, the Defendant filed her first motion with this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A). [Doc. 63]. For grounds, the Defendant argued that she was at risk of serious illness or death from COVID-19 due to a number of underlying health conditions; that the COVID-19 pandemic created unusually harsh conditions of confinement; that

she had "served enough time to serve just punishment"; and that her underlying offense was non-violent and other, more violent offenders have received the benefit of compassionate release. [Id.]. Notably, the Defendant did not assert any allegations of sexual abuse as a basis for relief in this motion.

The Court denied the Defendant's motion, holding that "none of the grounds cited by the Defendant, considered either singly or in combination, constitute extraordinary and compelling reasons for her early release." [Doc. 64 at 7]. Further, the Court determined that the relevant § 3553(a) factors "continue[d] to weigh in favor of her continued incarceration" in light of the seriousness of her offense of conviction and her significant criminal history. [Id. at 9]. The Fourth Circuit affirmed the Court's denial of the Defendant's compassionate release request. United States v. Neris, No. 22-7401, 2023 WL 4557480, at *1 (4th Cir. July 17, 2023) (unpublished decision).

In April 2023, the United States Attorney's Office for the Northern District of Florida charged Lenton Hatten, a former correctional officer at FCI Tallahassee, with sexual abuse of a prisoner after another inmate, B.H., reported that she had a sexual relationship with Hatten between October 2021 and August 2022. See United States v. Hatten, No. 4:23CR18, Doc. 1 (N.D. Fla. 2023). DNA evidence collected during a forensic examination

corroborated the reported relationship. Id. Hatten retired from the Bureau of Prisons in August 2022. United States v. Hernandez, No. 4:23-CV-319, Doc. 76 at ¶ 22 (N.D. Fla. July 28, 2025).

Hatten pled guilty in May 2023, and the district court sentenced Hatten in August 2023. Hatten, No. 4:23CR18, Doc. 31. The Defendant submitted a victim-impact statement in connection with Hatten's sentencing, alleging that Hatten also had abused her. [Doc. 75-3].

Shortly after Hatten pled guilty, the Defendant submitted through counsel an administrative claim on form SF-95 seeking $10 million in money damages from the United States related to the sexual abuse she allegedly suffered at the hands of Officer Hatten. [Docs. 75-5, 78-6]. The claim alleged, among many other things, that Hatten engaged in sexual misconduct with the Defendant "repeatedly from in or about May 2021 though in or about September 2022." [Doc. 75-5 at 4].

On June 8, 2023, the day after the BOP received the Defendant's administrative claim alleging abuse by Hatten, a BOP nurse evaluated the Defendant under the Prison Rape Elimination Act (PREA). [Doc. 75-6 at 25-26]; Hernandez, No. 4:23-CV-319, Doc. 76 at ¶ 31. The nurse assessed whether the Defendant required emergency care and whether forensic evidence could be collected. [Doc. 75-6 at 25-26]. The Defendant reported

that the assaults had occurred two years prior, and she denied any current injuries or symptoms. [Id. at 24-25]. As a result, no forensic evidence was collected and no emergency care was determined to be needed. [Id.]. The Defendant was offered prophylactic treatment and a follow up for sexually transmitted diseases. [Id. at 26]. The Defendant denied needing treatment. [Id.]. The nurse provided her with counseling related to access to care and other matters. [Id. at 27].

The Defendant was also evaluated by the facility's chief psychologist, given the opportunity to provide more information about the allegation, offered mental health services, and advised of possible treatment options available to her through the prison's psychology-services department and an outside liaison. [Doc. 87 at 451]. The Defendant reported that she did not require services or intervention through the psychology-services department at the time. [Id.]. The psychologist advised her of the BOP's Sexual Abuse Intervention/Prevention program and associated procedures and the process by which she could access additional mental health services if needed in the future. [Id.].

Later in June 2023, the Defendant filed a pro se "Request for Administrative Remedy" with allegations against Hatten and the United

States similar to those in her SF-95 administrative claim. [Doc. 75-7]. When that was denied, she filed an appeal of that request. [Id.].

In January 2024, the Defendant was transferred to Federal Medical Center (FMC) Carswell, which is located in Fort Worth, Texas. [Doc. 75-1 at ¶ 50].

Federal officials investigated the Defendant's administrative claim of sexual misconduct against Hatten pursuant to BOP policy and the Department of Justice's PREA regulations. [Doc. 86 at 8]. The investigation of the Defendant's administrative claim "did not find that Hatten sexually assaulted or abused" the Defendant. [Id.].

The BOP advised the Defendant by a November 1, 2024, letter that her administrative claim related to Hatten was denied. [Id.]. The letter also informed her that, if she was not satisfied with the BOP's determination, she could file a lawsuit in the appropriate United States District Court within six months. [Id.].

In April 2025, the Defendant and several other women filed a lawsuit against the United States in the Northern District of Florida alleging sexual misconduct by Hatten. Davis v. United States, No. 4:25-CV-198, Doc. 1 (N.D. Fla. Apr. 28, 2025). This lawsuit was eventually consolidated with those of several other plaintiffs who also alleged abuse by Hatten.

Hernandez v. United States, 4:23-CV-319, Doc. 66 (N.D. Fla. July 14, 2025). A bench trial is currently scheduled in that consolidated action for March 2027. Id., Doc. 108.

On September 3, 2024, before the denial of her administrative claim, the Defendant, through counsel, filed a second request for compassionate release with the BOP. [Doc. 86 at 9]. In that request, the Defendant alleged that Hatten had sexually abused her in 2021. [Id.]. She further alleged that, at FMC Carswell, she had been subject to "degrading and abusive treatment by BOP staff." [Id. at 10]. She did not allege any specific sexual abuse by a correctional officer at FMC Carswell. [Id. at 10].

In December 2024, the BOP denied the Defendant's request for a reduction in sentence on the grounds that the Defendant had "not been found to be a victim of sexual misconduct through a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." [Id. at 12].

In September 2025, the Defendant was transferred to Federal Prison Camp (FPC) Alderson. During her intake interview at FPC Alderson, the Defendant reported that she had been sexually assaulted by a female correctional officer, whom the Court will refer to as "Officer Doe," in June 2024 while she was housed at FMC Carswell. [Doc. 87 at 42-45]. After the

Defendant reported the alleged misconduct by Officer Doe, she was evaluated by a nurse, given a clinical assessment, and provided with crisis intervention by the facility's victim-advocate trained chief psychologist. [Id. at 419–22]. However, because the alleged assault had occurred sixteen months prior, no emergency care was administered and no forensic evidence was collected. [Id. at 43]. The Defendant continues to receive psychology services, individual therapy, regular counseling, medication, and other mental health treatment from the BOP. [Id. at 1-21, 398, 400-422].

The BOP investigated the Defendant's report of sexual abuse by Officer Doe. [Doc. 88 at 1–3]. The BOP's investigation revealed "insufficient evidence to support the allegation" of sexual abuse by Doe. [Id. at 2]. The investigation was closed on December 19, 2025, after the "investigation did not sustain allegations against" Doe. [Id. at 1].

On December 22, 2025, the Defendant filed the present compassionate release request. For grounds, the Defendant alleges that the abuse she experienced at the hands of correctional officers constitutes "extraordinary and compelling reasons" for release under §§ 1B1.13(b)(4) and 1B1.13(b)(5) of the Sentencing Commission's applicable policy statement.

The Defendant is still housed at FPC Alderson, and her projected release date is January 15, 2033.[1]

## II. DISCUSSION

Section 3582(c)(1)(A) permits a defendant to seek a modification of her sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here it is undisputed that the Defendant has exhausted her administrative rights with the BOP. Accordingly, the Court will proceed to address the merits of the Defendant's second compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

[1] See https://www.bop.gov.mobile/find_inmate/byname.jsp#inmate_results (last visited July 23, 2026).

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to address the amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy statement also sets forth a list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a reduction in sentence, including: (1) the defendant's medical condition, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the defendant's child, or where the defendant would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least

10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. U.S.S.G. § 1B1.13(b)(1)-(6).

Here, the Defendant relies primarily upon § 1B1.13(b)(4) for relief. That subsection provides that extraordinary and compelling reasons exist for a sentence reduction where:

> The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
> (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
>
> (B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
>
> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. §1B1.13(b)(4).

The Defendant readily concedes that, to date, her allegations of sexual abuse have not resulted in a conviction in a criminal case, a finding or admission of civil liability in a civil case, or a finding in an administrative proceeding in her favor.[2] Thus, her allegations of sexual abuse can constitute extraordinary and compelling circumstances only if she can show that administrative proceedings were unduly delayed or that she is currently in imminent danger.

The Defendant fails on both counts. While she alleges, in a conclusory fashion, that the Federal Bureau of Investigation unduly delayed its investigation of her allegations against Officer Hatten, the Defendant has offered no evidence to support this allegation. Moreover, any alleged delay in the FBI's investigation of such allegations would have related only to a possible *criminal case* against Officer Hatten. The "undue delay" contemplated by § 1B1.13(b)(4) applies only to *administrative proceedings*. The Defendant concedes that she pursued her allegations against Officer Hatten in an administrative proceeding, and she has not identified any undue delay in the resolution of that proceeding. Further, the Defendant does not

[2] While Officer Hatten was convicted of *sexual abuse of a prisoner*, those charges did not stem from the alleged abuse of the Defendant here.

contend that she is in imminent danger. She is no longer housed at either of the facilities where she alleged the sexual abuse occurred, and she has not alleged that she has been subjected to any type of abuse while at FPC Alderson.[3] For all of these reasons, the Court concludes that the Defendant has failed to demonstrate that she satisfies the requirements of § 1B1.13(b)(4).[4]

The Defendant alternatively argues that her allegations of abuse are sufficient under § 1B1.13(b)(5), which contemplates a finding of extraordinary and compelling reasons for relief upon a showing of "any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [of U.S.S.G. § 1B1.13(b)], are *similar in gravity* to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5) (emphasis added). Here, however, the Defendant is not presenting circumstances that are

---

[3] The Defendant has submitted a Declaration, in which she details the alleged sexual abuse of other inmates at FPC Alderson and states that she constantly worries that she will be sexually assaulted again as long as she remains in BOP. [Doc. 79 at ¶ 15]. The Defendant, however, has not personally experienced any abuse while at FPC Alderson.

[4] The Court notes that the denial of the Defendant's compassionate release request pursuant § 1B1.13(b)(4) is without prejudice. If the Plaintiff's civil action that is currently pending in the Northern District of Florida against Officer Hatten results in a finding establishing the misconduct that the Plaintiff alleges, she may present that finding as an extraordinary and compelling reason for relief in a future motion. Likewise, she may seek redress for her claims of abuse against Officer Doe in other forums. On the current record, however, the Court concludes that the Defendant is not entitled to relief under § 1B1.13(b)(4).

"similar in gravity" to the circumstances described in § 1B1.13(b)(4); she is presenting the same circumstances with which she attempted to obtain relief under §1B1.13(b)(4). However, she was unable to satisfy those requirements because there has been no conviction or finding of liability to substantiate her abuse allegations. The Court declines to use § 1B1.13(b)(5) as an end-run around the requirements of § 1B1.13(b)(4). See United States v. Nicholas, No. 7:16-cr-30026, at *7 (W.D. Va. Nov. 6, 2024) (denying relief under § 1B1.13(b)(5) as doing so would "do an end-run around the 10-year requirement under § 1B1.13(b)(6)").

The Defendant further cites her ongoing mental health struggles and need for mental health treatment as grounds for a reduction of her sentence. [Doc. 75 at 28]. In support of this argument, she cites the report of a psychologist who opines that the "most effective" treatment for the Defendant would be outside of prison. [Id. at 29; Doc. 75-9 at 19]. Whether the Defendant is receiving the *best* possible care is not the issue, however. The records presented to the Court demonstrate that the Defendant has received and continues to receive psychological services, individual therapy, regular counseling, medication, and other mental-health treatment from the BOP. The Defendant has failed to establish that the treatment provided is so grossly inadequate as to place her at risk of serious deterioration in her

mental health. See U.S.S.G. § 1B1.13(b)(1)(C) (noting extraordinary and compelling reasons for release can exist where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death").

Even if the Defendant's allegations of sexual abuse and ongoing mental health struggles constituted an extraordinary and compelling reason for relief, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

As the Court found in denying the Defendant's first motion for compassionate release [Doc. 64], analysis of the relevant § 3553(a) factors continue to weigh in favor of her continued incarceration. The Defendant was responsible for distributing a significant amount of methamphetamine in Western North Carolina. Following her arrest, she admitted to investigators that she and her co-conspirator had purchased 12-15 kilograms of methamphetamine from their supplier in the three preceding months alone.

Additionally, the Defendant possessed firearms, despite her prohibited status, and maintained a premise for distributing methamphetamine.[5]

Additionally, the Defendant has an extensive criminal history, both in Florida and North Carolina. For example, she was sentenced to probation in 2012 for possession of drug paraphernalia and a small amount of marijuana. [Doc. 49: PSR at 10]. The following year, she was sentenced for six offenses related to cocaine trafficking. [Id. at 11]. She received an active sentence followed by a term of probation, during which she participated in classes and completed a 12-week drug-abuse program. [Id. at 11, 15]. In 2018, she was sentenced for unlawfully resisting arrest, after she ran and hid from a law-enforcement officer trying to serve a warrant for her arrest. [Id. at 13]. The Defendant then violated the conditions of her state probation sentences multiple times. [Id. at 10-12]. Her violations included failing to abide by curfew, not providing truthful information to the probation officer, failing to report for office visits, failing to submit to drug screening, and not staying at her reported address. [Id. at 12].

[5] The Defendant attempts to downplay her role in the conspiracy, including her possession of firearms; however, the Court already made specific findings regarding these issues when calculating her base offense level at sentencing. The Defendant cannot now relitigate the calculation of her sentence in a compassionate release motion. See Fernandez v. United States, 146 S. Ct. 1292 (2026); United States v. Ferguson, 55 F.4th 262, 271 (4th Cir. 2022).

Based on the Defendant's history and characteristics and the need to protect the public from further crimes, the need to provide just punishment, and the need to deter Defendant and others from engaging in similar criminal activity, the Court concludes that the sentence of 210 months in prison that she received for the present conviction is sufficient but not greater than necessary to accomplish the § 3553(a) sentencing objectives.

While the Court takes very seriously the Defendant's allegations of sexual abuse, the fact remains that the Defendant's allegations have not resulted to date in a criminal conviction, a finding of civil liability, or an administrative finding in her favor. Accordingly, the Court is constrained to conclude that the Defendant has failed to establish at this time an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i) and that the § 3553(a) factors weigh in favor of her continued incarceration. The Defendant's second motion for compassionate release is therefore denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 74] is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 5, 2026

Martin Reidinger
Chief United States District Judge